UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| GREGORY B. SULLIVAN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:22-cv-00147-JDL |
| | ) | |
| CHESTER WATER | ) | |
| AUTHORITY, et al., | ) | |
| | ) | |
| Defendants | ) | |

## ORDER ON PENDING MOTIONS AND RECOMMENDED DECISION AFTER REVIEW OF COMPLAINT PURSUANT TO 28 U.S.C. § 1915

Plaintiff alleges that more than sixty-five individuals, businesses, and local, state, and federal agencies conspired to violate his and others' constitutional and statutory rights. (Complaint, ECF No. 1.)  After he filed his complaint, Plaintiff moved to amend the complaint.  (Motion, ECF No. 10.)

With his complaint, Plaintiff filed a motion to proceed without prepayment of the filing fee, which motion the Court granted. (Motion, ECF No. 3; Order, ECF No. 7.)  In accordance with the statute that governs matters filed without prepayment of the filing fee, a preliminary review of Plaintiff's complaint is appropriate.  28 U.S.C. § 1915(e)(2).

I grant Plaintiff's motion to amend his complaint.  Following a review of Plaintiff's amended complaint pursuant to 28 U.S.C. § 1915, I recommend the Court dismiss the matter.

## STANDARD OF REVIEW

The governing statute, 28 U.S.C. § 1915, is designed to ensure meaningful access to the federal courts for those persons unable to pay the costs of bringing an action.  When a party is proceeding without prepayment of the filing fee, however, "the court shall dismiss the case at any time if the court determines," inter alia, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B). "Dismissals [under § 1915] are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom.  *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).  A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "A self-represented plaintiff is not exempt from this framework, but the court must construe his complaint 'liberally' and hold it 'to less stringent standards than formal pleadings drafted by lawyers.'" *Waterman v. White Interior Sols.*, No. 2:19-cv-00032-JDL, 2019 WL 5764661, at *2 (D. Me. Nov. 5, 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  This is "not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim." *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980).  Moreover, "[d]espite the

2

highly deferential reading which [courts] accord a litigant's complaint under Rule 12(b)(6), [courts] need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." *Correa-Martinex v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir. 1990).

## FACTUAL BACKGROUND

Plaintiff moved to amend his complaint to correct the date he alleges an event occurred. Federal Rule of Civil Procedure 15(a)(1) permits Plaintiff to amend his complaint once as a matter of course within 21 days of service of the complaint. The complaint has not been served upon any defendant. In accordance with Rule 15, therefore, Plaintiff's motion to amend is granted. Plaintiff's complaint is amended as Plaintiff requests. The following facts are drawn from Plaintiff's complaint, as amended.

Plaintiff, who is African American, was employed by Defendant Chester Water Authority (CWA) in Chester, Pennsylvania from 2000 until 2008. (Complaint ¶¶ 1, 3, 14.) Plaintiff alleges state and local political officials not only prevented an investigation into, but participated in, the exploitation of the citizens of Chester, who are predominately poor and African American. (*Id*. ¶ 9.)

In 2000, Plaintiff filed a complaint with Defendant Equal Employment Opportunity Commission (EEOC) against the CWA and his union, Defendant International Brotherhood of Firemen and Oilers SEIU Local # 473, for racial discrimination and harassment, which complaint resolved through mediation. (*Id*. ¶¶ 1, 3, 5.) Plaintiff filed additional complaints for harassment and retaliation against CWA with the EEOC in 2003 and 2005; both complaints were dismissed. (*Id*. ¶ 6.)

In 2007, Plaintiff injured a toe on his right foot in a workplace incident.  (*Id*. ¶ 7.) He alleges he and other African American employees of CWA did not receive full benefits after injuries and illnesses.  (*Id*.)  He filed another complaint against CWA with the EEOC in 2007 for racial discrimination and retaliation, which complaint he did not pursue because of alleged intimidation.  (*Id*. ¶ 7.)  Plaintiff later refiled the complaint.  (*Id*. ¶ 8.)  He asserts the EEOC coerced him into a mediation of the matter in 2008, but no settlement was reached.  (*Id*. ¶¶ 8, 10.)  Plaintiff does not state how the complaint was resolved.

Plaintiff alleges he received substandard care for his toe injury.  (*Id*. ¶ 11.)  In July 2010, a surgeon operated on Plaintiff's toe.  (*Id*. ¶ 21.)  Plaintiff felt continuing pain after the surgery and asserts he received inadequate care because he reported the discrimination that he allegedly experienced.  (*Id*. ¶ 22.)  He contends that he never received adequate care for the toe from subsequent medical providers in Maine.  (*Id*. ¶ 26.)

Plaintiff asserts that from 1999 until 2008 he experienced discrimination due to a hearing disability, and retaliation and harassment because of his disability and race.  (*Id*. ¶ 12.)  Plaintiff claims he was subjected to surveillance by a counterintelligence program, involving several individuals and organizations in Pennsylvania.  (*Id*.)

CWA terminated Plaintiff's employment in October 2008.  (*Id*. ¶ 14.)  When he contacted the EEOC about filing another complaint, the EEOC directed him to speak with his union regarding his termination.  (*Id*.)  A union representative informed Plaintiff the union could not help him; Plaintiff did not pursue the matter.  (*Id*.)

Plaintiff moved to Portland, Maine in March 2010 and applied for General Assistance soon after his arrival.  (*Id*. ¶ 17.)  Plaintiff claims that Defendant City of Portland

4

discriminated against him, as well as other minorities, the homeless, and those without financial means, and that he has been denied certain public services. (*Id*. ¶ 27.) He also claims he was denied care at various medical facilities. (*Id*. ¶ 17.)

Plaintiff complained to Defendant Maine Department of Health and Human Services (DHHS) beginning in July 2011 about the long lines to apply for and receive benefits, the irregularities regarding the General Assistance program's refusal to pay recipients' "back bills," and the harassment from staff and other recipients. (*Id*. ¶ 28.) Plaintiff contends that after his complaint to DHHS, he was harassed by various agencies and businesses in Portland. (*Id*.)

Shortly after arriving in Maine, Plaintiff moved into Defendant YMCA of Portland housing, where he currently resides. (*Id*. ¶ 18.) Plaintiff claims staff at the facility permitted a resident to address him with a racially derogatory term, and that other residents have harassed him. (*Id*. ¶¶ 18, 41-43, 45.) Plaintiff alleges he had some difficulties with his cell phone after using the phone to research the statutes governing harassment. (*Id*. ¶¶ 50, 53.)

Plaintiff also claims while residing at the YMCA, his pain medication was taken and from him and some residents took items from other residents. (*Id*. ¶¶ 40, 42, 47.) In 2015, Plaintiff attempted to file charges against the director of the YMCA's residential program regarding the theft of medications and other belongings. (*Id*. ¶¶ 31, 36.) According to Plaintiff, Defendant Portland Police Department did not investigate the charges. (*Id*. ¶ 36.)

Plaintiff alleges staff harassed him for using the "handicap door" when entering the building.  (*Id.* ¶ 48.)   In 2020, staff informed Plaintiff that he needed to provide documentation of his disability to use the door.  (*Id.* ¶ 54.)   After providing the documentation, staff told him he had to have a cart to use the door.  (*Id.* ¶ 55.)

In April 2010, Plaintiff began working at Defendant Clarion Hotel in Portland, where he claims he experienced discrimination.  (*Id.* ¶ 20.)  He alleges he was deprived of the tips he earned, he had to accomplish two-person tasks by himself, and cooks and waitstaff refused to make his meals or take his orders.  (*Id.*)

In 2012, Plaintiff called 911 from a store near his residence for a ride to the hospital, and the arriving EMTs refused to transport him.  (*Id.* ¶ 39.)  He called 911 again and police officers responded.  (*Id.*)  The officers did not transport him to the hospital.  (*Id.*)

Plaintiff asserts he was suspended from General Assistance from February 2013 to July 2013.  (*Id.* ¶¶ 29-30.)  Plaintiff was suspended from MaineCare and food stamps in December 2013.  (*Id.* ¶ 30.) In 2017, Plaintiff was suspended temporarily from General Assistance for failing to provide requested information regarding his claimed disability. (*Id.* ¶¶ 33, 35.)

Plaintiff alleges various medical providers, General Assistance personnel, DHHS, and other individuals and agencies in Maine harassed him, discriminated against him, and denied him services based on his history in Pennsylvania and his complaints to government officials about his employment with CWA.  (*Id.* ¶¶ 17, 27, 31, 33, 34, 46.)  Plaintiff also contends that there were irregularities with his General Assistance benefits and MaineCare

benefits, and that he was subject to surveillance and harassment because he complained. (*Id*. ¶¶ 37, 40, 43, 46-47.)

Plaintiff claims that after his mother passed away in early 2016, his sister asked the director of the YMCA's men's dormitory to pressure Plaintiff to sign a letter of renunciation of his claims to the estate. (*Id*. ¶ 48) Sometime in April 2016, Plaintiff signed the letter. (*Id*.)

Plaintiff also complains about the medical treatment he received from several Maine-based providers, including complaints about issues with medications and records. (*Id*. ¶¶ 56-59, 61-63, 65-67.) He alleges there was a pattern of discrimination, an effort to deem him not disabled and diagnose him as suffering from mental or cognitive issues, and to make it difficult for him to obtain prescriptions. (*Id*. ¶ 60.)

## DISCUSSION

Plaintiff alleges two "fraud enterprises," one in Pennsylvania and one in Maine, designed to violate his and others' constitutional rights.[1]   Plaintiff also contends

---

[1] Plaintiff purports to allege claims on behalf of himself and other "similarly situated" individuals of "African-American descent" or who are disabled, who (1) were or are employed by CWA (the putative Pennsylvania class members) or (2) are citizens of Maine who have experienced certain forms of discrimination (the putative Maine class members). (Complaint ¶¶ 74(1)-(2).) Plaintiff cannot, however, assert claims on behalf of other individuals. "The federal courts have consistently rejected attempts at third-party lay representation. By law an individual may appear in federal courts only pro se or through legal counsel." *Herrera-Venegas v. Sanchez-Rivera*, 681 F.2d 41, 42 (1st Cir. 1982) (citing *United States v. Taylor*, 569 F.2d 448, 450–51 (7th Cir.), *cert. denied*, 435 U.S. 952 (1978), and 28 U.S.C. § 1654). As a pro se litigant, Plaintiff cannot represent others in this court. *Id*.; *see also Smith v. Schwarzenegger*, 393 Fed. App'x 518, 519 (9th Cir. 2010); *Heard v. Caruso*, 351 Fed. App'x 1, 15 (6th Cir. 2009). Furthermore, "a class can only be represented by counsel who is competent to do so." *McMann v. Baker*, Civil No. 18-11550-LTS, 2019 WL 1333272, at *2 (D. Mass. Mar. 25, 2019); *see also Murphy v. Baker*, Civil No. 19-12481-PBS, 2020 WL 3420632, at *1 (D. Mass. June 22, 2020) ("pro se plaintiffs cannot act as class representatives.").

Defendants have engaged in a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, and violated federal and state civil and criminal law.  Plaintiff seeks reinstatement of his job with CWA, back pay, the value of certain property in Philadelphia, his inheritance from his mother's estate, punitive damages for his pain and suffering, and other monetary damages. (Complaint at PageID #: 148-49.)

## A.    Legal Standard

A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "The relevant question ... in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'"  *Rodríguez–Reyes v. Molina–Rodríguez,* 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Twombly,* 550 U.S. at 569 n. 14).  That is, the factual allegations must "nudge[] [the] claims across the line from conceivable to plausible." *Bell Atlantic Corp.*, 550 U.S. at 547.  To evaluate the sufficiency of the complaint, therefore, a court must "first, 'isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements,' then 'take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.'"  *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020) (alteration omitted) (quoting *Zenon v. Guzman*, 924 F.3d 611, 615-16 (1st Cir. 2019)).

**B.     RICO Claims**

RICO provides a private right of action for treble damages to '[a]ny person injured in his [or her] business or property by reason of a violation' of the Act's criminal prohibitions." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 641 (2008) (citing 18 U.S.C. § 1964(c)).  Such a claim "requires proof of several elements including the existence of a racketeering 'enterprise' and its conduct through a 'pattern' of racketeering activity." *Rectrix Aerodrome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n*, 610 F.3d 8, 11 (1st Cir. 2010) (citing 18 U.S.C. § 1961(4)-(5)).  Racketeering activity is defined to include a list of criminal offenses.  18 U.S.C. § 1961(1).

As to the "Pennsylvania Fraud Enterprise," Plaintiff alleges that the "predicate offenses" under RICO "have already been established by the EEOC itself when it found 'just cause' … for [a] [c]harge … for racial discrimination, violations of ADA and retaliation."  (Complaint ¶ 79.)  Plaintiff, however, has not alleged sufficient facts to support a RICO claim.

As to the "Maine Fraud Enterprise," Plaintiff alleges that he was deprived of adequate medical care and his constitutional rights, and that the predicate offenses consist of the denial of his General Assistance benefits, and the harassment, stalking and intimidation he contends he experienced.  (*Id.* ¶ 82.)  The denial of or delay in Plaintiff's receipt of General Assistance benefits would support a plausible RICO claim.

Furthermore, at least some of the claims Plaintiff attempts to assert would be time-barred. A civil claim under RICO is subject to a four-year statute of limitations.[2] *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). A RICO cause of action accrues and the statute of limitations begins to run when a person knew or should have known of his or her injury. *Ávarez-Maurás v. Banco Popular of P.R.*, 919 F.3d 617, 625-26 (1st Cir. 2019) (citing *Rotella v. Wood*, 528 U.S. 549, 555 (2000)). Plaintiff moved to Maine in March 2010. He filed this action in May 2022, twelve years after leaving Pennsylvania. Although he states that he visited Pennsylvania in 2014, he does not allege any further action by a defendant based in Pennsylvania after his move to Maine, other than to suggest there must have been communication regarding his history in Pennsylvania to persons, agencies, and organizations in Maine. Plaintiff's assertion is speculative and is insufficient to avoid the statute of limitations bar as to any claims arising during his time in Pennsylvania.

## C.     Discrimination Claim (Title VI of the Civil Rights Act)

Plaintiff claims discrimination in the medical care he received in Maine, his accommodations at the YMCA, his treatment by staff and fellow residents at the YMCA, and the administration of the City of Portland's General Assistance program. Plaintiff cites Title VI of the Civil Rights Act in support of his discrimination claims.

---

[2] An affirmative defense, such as the applicable statute of limitations, may be properly raised in a dismissal context when "the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings.'" *Blackstone Realty LLC v. F.D.I.C.*, 244 F.3d 193, 197 (1st Cir. 2001) (quoting *Aldahonda-Rivera v. Parke Davis & Co*., 882 F.2d 590, 591 (1st Cir. 1989)).

Title VI of the Civil Rights Act, 42 U.S.C. § 2000d et seq., provides that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" that is federally funded. "Title VI's protections are coextensive with the Equal Protection Clause of the Fourteenth Amendment." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 980 F.3d 157, 185 (1st Cir. 2020), *cert. granted*, 142 S. Ct. 895 (U.S. Jan. 24, 2022) (No. 20-1199). Private individuals may sue to enforce Title VI, and obtain injunctive relief and damages. *Alexander v. Sandoval*, 532 U.S. 275, 279-80 (2001). "Title VI itself directly reach[es] only instances of intentional discrimination." *Alexander v. Choate*, 469 U.S. 287, 293 (1985). To establish a Title VI claim,

> a plaintiff must show, inter alia, that the defendant discriminated against him on the basis of race, that the discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions. Under Title VI, an actionable 'discriminatory purpose … implies more than intent as volition or intent as awareness of consequences … [it] implies that the decisionmaker … selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.

*Bray v. Worcester Polytechnic Inst.*, 2022 WL 952131, at *10 (D. Mass. Mar. 30, 2022) (quoting *Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 416 (N.D.N.Y. 2019)).

Plaintiff alleges that certain conduct was racially motivated, but he alleges no facts that would support a finding "that the defendant[s] treated members of one race differently and less favorably than members of another race and that the defendant[s] did so with a racially discriminatory purpose." *Students for Fair Admissions, Inc.*, 980 F.3d at 195-96. Instead, his amended complaint consists of conclusory allegations regarding racial

discrimination and, therefore, the allegations are insufficient to state a plausible claim for violation of Title VI.  *Bray*, 2022 WL 952131, at *11.

## D.      Discrimination Claim (Title VII of the Civil Rights Act)

Plaintiff alleges that Defendant CWA and Defendant Clarion Hotel discriminated against him during his employment.  Plaintiff worked at CWA from 2000 through 2008. (Complaint ¶¶ 3, 14.)  His employment with the Clarion Hotel began on March 20, 2010, and apparently ended sometime after his toe operation on July 8, 2010.  (*Id*. ¶¶ 20, 27.) Plaintiff evidently maintains that Defendants CWA and Clarion Hotel discriminated against him in violation of Title VII of the Civil Rights Act.

To state a prima facie case of racial discrimination in compensation under Title VII, "[a plaintiff] must show that (1) he is a member of a protected class; (2) he met his employer's expectations; (3) he suffered adverse employment action …; and (4) similarly-situated employees outside the protected class received more favorable treatment." *Prescott v. Higgins*, 538 F.3d 32, 41 (1st Cir. 2008).  Plaintiff complains of various indignities he contends he suffered during his employment. Plaintiff, however, does not allege that employees of a different race were treated more favorably or that he suffered adverse employment action. (See Complaint ¶ 20.)  Plaintiff, therefore, has not stated a claim against Defendant Clarion Hotel for employment discrimination under Title VII.

As to CWA, given Plaintiff's allegations and the reasonable inferences to be drawn from the allegations, Plaintiff's claims based on the termination of his employment with CWA would be time-barred.  To proceed on a claim of employment discrimination pursuant to Title VII, an employee "must exhaust his administrative remedies before

12

initiating a complaint of discrimination in federal court." *Farris v. Shinseki*, 660 F.3d 557, 562 (1st Cir. 2011); *see* 42 U.S.C. § 2000e-16(c).  After filing a charge with the EEOC "a plaintiff must file [his or] her complaint within ninety days of receiving a notice of the right to sue from the EEOC," *Uwakwe v. Pelham Academy*, 286 F. Supp. 3d 213, 220 (D. Mass 2017) (citing 42 U.S.C. § 2000e-5(f)(1)), or within 180 days after filing the initial charge.  The ninety-day period for filing a court action is treated as a statute of limitations.  *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001).

Plaintiff alleges that his 2003 and 2005 charges filed with the EEOC were dismissed.  (Complaint ¶ 6.)  Plaintiff, therefore, cannot proceed in this action, filed in May 2022, based on the 2003 or 2005 charges.

The outcome of his renewed 2007 charge is somewhat  unclear.  (*Id*. ¶ 13.) The EEOC normally issues a "right-to-sue" letter to a complainant after it investigates a charge (1) when it is unable to conclude that there is reasonable cause to believe discrimination has occurred; (2) after it determines there is reason to believe discrimination has occurred, and conciliation does not resolve the charge; (3) when it has not resolved the charge after 180 days and sees no reason to take action on the charge; or (4) when the complainant requests a right-to-sue letter after 180 days.  *See* 42 U.S.C. § 2000e-5(f)(1); *Burgh*, 251 F.3d at 470.  The "statute of limitations does not begin to run unless and until there is 'final agency action,' such as the issuance of a right-to-sue letter.  Without that final agency action, the complainant has not exhausted his administrative remedies and cannot bring suit."  *Id*. at 470-71.

Plaintiff's complaint is silent on the timing of any right-to-sue letters issued by the EEOC regarding his charges against CWA. If the EEOC issued the letters in the normal course for the 2007 charge, the time to file suit passed more than a decade ago and Plaintiff's claim would be time-barred. If the EEOC did not issue the letter, there is no final agency action on the charge. Plaintiff thus would not have exhausted his administrative remedies and therefore could not sue on the charge. In short, Plaintiff would either be time-barred from pursuing the claim (most likely) or barred because he has not yet exhausted the available administrative remedy regarding the 2007 charge.

### E.   The Fair Housing Act

Plaintiff seeks to recover under Title VIII of the Civil Rights Act of 1968, the Fair Housing Act (FHA), which prohibits discrimination based on race or disability in the sale or rental of a dwelling, or in the terms, conditions, or privileges of sale or rental, or in the provision of services or facilities in connection with a dwelling. 42 U.S.C. § 3604(b), (f). Because Plaintiff resides at Defendant YMCA, he presumably seeks to assert a Title VIII claim against the YMCA.

The FHA "contemplates three types of claims for perceived discrimination: disparate treatment, disparate impact, and failure to make reasonable accommodations." *Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 66 (1st Cir. 2010) (internal quotation marks omitted). In addition, the FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, … any right granted or protected by section … 3604 … of this title." 42 U.S.C. § 3617.

To state a disparate impact claim, a plaintiff must allege that a facially neutral policy of the YMCA serves to disadvantage a particular minority. *Cf. Prescott v. Higgins*, 538 F.3d 32, 41 (1st Cir. 2008) (describing disparate impact claims in the employment context). Plaintiff has not alleged any facts that would support such a claim.

To the extent that Plaintiff seeks to assert a claim based on a failure to accommodate his disability by the YMCA or its employees, Plaintiff's claim also fails. To proceed on a failure to accommodate claim, Plaintiff must allege that he requested an accommodation for his disability, that the accommodation was needed to permit him to "use and enjoy the housing in question," and that his request was denied. *Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 67 (1st Cir. 2010). Though Plaintiff alleges that staff members of Defendant YMCA challenged him for using the "handicap door," required him to provide documentation for his continued use of the door, and told him he needed a cart to use the door, Plaintiff does not allege that access through the door was necessary, that he was denied access through the door, or that he asked to use the door without a cart and was denied. (*See* Complaint ¶¶ 54-55.)

Finally, Plaintiff has not asserted an actionable disparate treatment claim. To sustain a disparate treatment claim based on a disability, a plaintiff must demonstrate both disadvantageous treatment and "an impermissible, disability-based discriminatory purpose." *Batista v. Cooperativa De Vivienda Jardines De San Ignacio*, 776 F.3d 38, 44 (1st Cir. 2015). Plaintiff's allegations regarding use of the "handicap door" do not support a disparate treatment claim based on a disability. If Plaintiff attempts to assert a disparate treatment claim based on race, although Plaintiff alleges that some unidentified residents

made racially disparaging remarks to him, he does not allege a defendant made the remarks and his assertion that Defendant YMCA did not prevent the residents from making the remarks, without more, is insufficient to sustain a claim against the YMCA.

## F.    42 U.S.C. § 1983 Claims

Plaintiff alleges the violation of his constitutional rights. Plaintiff would assert a claim for a constitutional violation pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ....

42 U.S.C. § 1983.

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Section 1983 supplies a private right of action against a person who, under color of state law, deprives another of 'any rights, privileges, or immunities secured by the Constitution and [federal] laws.'"  *Gray v. Cummings*, 917 F.3d 1, 7 (1st Cr. 2019) (alteration in original) (quoting 42 U.S.C. § 1983). To maintain a claim under section 1983, a plaintiff must establish: "1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999).

16

1.      **Statute of Limitations**

Plaintiff's claims arising under 42 U.S.C. § 1983 are governed either by Pennsylvania's two-year statute of limitations or Maine's six-year statute of limitations.[3] *See Carreras-Rosa v. Alves-Cruz,* 127 F.3d 172, 174 (1st Cir.1997) ("The limitation period for filing [a] § 1983 claim is governed by the applicable state statute of limitations for personal injury actions."); *Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001) (because section 1983 does not have its own statute of limitations, a federal court "must borrow the forum state's limitation period"); *see* 42 Pa. Cons. Stat. § 5524(2), (3);[4] 14 M.R.S. § 752.[5] While the forum state provides the applicable statute of limitations period, the date a claim accrues under section 1983 "is measured by federal law." *College Hill Props., LLC v. City of Worcester*, 135 F. Supp. 3d 10, 14 (D. Mass. 2015). "[S]uch a cause of action accrues 'when the plaintiff knows, or has reason to know of the injury on which the action is based.'" *Id*. (quoting *Alamo-Hornedo v. Puig*, 745 F.3d 578, 581 (1st Cir. 2014) (citation omitted). A plaintiff "is deemed to know or have reason to know 'at the time of the act itself and not at the point that the harmful consequences are felt.'" *Moran Vega v. Cruz*

---

[3] Because the statute of limitations on Plaintiff's Pennsylvania-based claims has run under either Pennsylvania or Maine law, I do not address any choice of law issues with respect to the claims. *See Okmyansky v. Herbalife Int'l of Am., Inc*., 415 F.3d 154, 158 (1st Cir. 2005) ("when the resolution of a choice-of-law determination would not alter the disposition of a legal question, a reviewing court need not decide which body of law controls.").

[4] Pennsylvania's general statute of limitations provides that both "[a]n action to recover damages for injuries to the person … caused by the wrongful action or neglect or unlawful violence or negligence of another," and any action "for taking, detaining or injuring personal property, including actions for specific recovery thereof," must be commenced within two years of the occurrence of the injury. 42 Pa. Cons. Stat. § 5524(2), (3)

[5] Maine's statute of limitations provides that "[a]ny civil action shall be commenced within 6 years after the cause of action accrues and not afterwards …."  14 M.R.S. § 752.

*Burgos*, 537 F.3d 14, 20 (1st Cir. 2008) (quoting *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 6 (1st Cir. 2007)).

Based on his allegations, Plaintiff knew or had reason to know by 2010 of the constitutional injuries he allegedly incurred in Pennsylvania.  Plaintiff's Pennsylvania-based claims are therefore time-barred whether Pennsylvania's two-year statute of limitations or Maine's six-year statute of limitations applies.  Any Maine-based claims arising prior to May 17, 2016, would also be time-barred.

### 2.    Claims Against States/City of Portland

Plaintiff asserts claims against the Commonwealth of Pennsylvania and the Maine Department of Health and Human Services.  Both parties are immune from suit in this Court under the doctrine of sovereign immunity exemplified by the Eleventh Amendment of the United States Constitution. With limited exceptions not relevant here, the states and their agencies have immunity in federal court against suits brought by citizens, regardless of the form of relief requested. *Poirier v. Mass. Dep't of Corr.*, 558 F.3d 92, 97 n.6 (1st Cir. 2009) ("A plaintiff may seek prospective injunctive relief against a state official, but may not obtain such relief against a state or its agency because of the sovereign immunity bar of the Eleventh Amendment.").

A party can pursue a claim against a state official in the official's official and personal capacities. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  An official capacity claim is not treated as a claim against the official, but it is considered a claim against the official's office.  *Will*, 491 U.S. at 71.  Under the Eleventh Amendment, recovery of retroactive monetary awards where payment would

come from state coffers is barred.[6] *Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. Gonzalez-Feliciano*, 695 F.3d 83, 103 (1st Cir. 2012), *cert. denied,* 134 S. Ct. 54 (2013). In an official capacity claim against a state office holder, therefore, a federal court may only award prospective injunctive relief against the office holder. *Hutto v. Finney*, 437 U.S. 678, 690 (1978) (citing *Ex parte Young,* 209 U.S. 123 (1908)). In an official capacity claim against a *municipal* office holder, however, both damages and injunctive relief may be recovered, provided "a municipal policy or custom caused the constitutional injury." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993); *see also Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 131 S. Ct. 447, 449 (2010) (holding that the policy or custom requirements apply to claims for prospective injunctive relief as well as claims for money damages).

Unlike an official capacity claim, a "personal capacity" claim under section 1983 is not directed at the state office, but it is asserted against the individual defendant personally.[7] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state

---

[6] "[T]he [Supreme] Court long ago held that the Eleventh Amendment bars a citizen from bringing suit against the citizen's own State in federal court, even though the express terms of the Amendment refer only to suits by citizens of another State." *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987). Prospective injunctive relief is not barred by the Eleventh Amendment based on the idea that "when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Virginia Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011).

[7] "Personal capacity" claims are referred to, interchangeably, as "individual capacity" claims. *See, e.g., Lane v. Franks*, 134 S. Ct. 2369, 2383 (2014); *Goldstein v. Galvin*, 719 F.3d 16, 23 (1st Cir. 2013).

law, caused the deprivation of a federal right." *Graham*, 473 U.S. at 166 (emphasis in original).

Plaintiff has not joined an employee of the Commonwealth of Pennsylvania or State of Maine as a defendant. Plaintiff's allegations regarding the conduct of individuals on behalf of the Commonwealth of Pennsylvania and the Maine Department of Health and Human Services, therefore, do not state an actionable claim against a named defendant.

Finally, regardless of the merits of Plaintiff's claims against the individual defendants, Plaintiff has not asserted an actionable § 1983 claim against Defendant City of Portland. A municipality cannot be vicariously liable for a constitutional deprivation simply because the deprivation was caused by a municipal employee. *Welch v. Ciampa,* 542 F.3d 927, 941 (1st Cir. 2008) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978)). For a municipality to be liable for a constitutional deprivation, the record must include evidence that a municipal policy, custom, or practice caused the deprivation. *Id.* The applicable standard requires a plaintiff to "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cty. Comm'rs v. Brown,* 520 U.S. 397, 403 (1997). Plaintiff has not identified a municipal policy or custom that resulted in the alleged deprivation of his constitutional rights. Plaintiff, therefore, cannot prevail on a § 1983 claim against the City of Portland.

### 3.   Due Process

Plaintiff's claims regarding his loss of General Assistance benefits arguably implicate his procedural and substantive due process rights. To state a procedural due process claim under section 1983, Plaintiff "must [demonstrate] that [he] was deprived of

a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process." *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 29 (1st Cir. 2008).

Where a plaintiff alleges that an individual deprived him of property either through negligence or through intentional misconduct (sometimes referred to as a "random, unauthorized act"), the Due Process Clause is only violated if the state does not afford meaningful post-deprivation remedies. *Hudson v. Palmer*, 468 U.S. 517, 532-33 (1984) ("[W]here a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure ... it is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place.") (internal quotations omitted). Plaintiff has not alleged nor does the record otherwise reflect that Plaintiff challenged the denial of benefits through the Maine Rule of Civil Procedure 80B, which provides for a review by the Maine Superior Court of an action by a governmental entity. Plaintiff, therefore, has not alleged a procedural due process claim.

The substantive guarantee of the Due Process Clause "rests not on perceived procedural deficiencies but on the idea that the government's conduct, regardless of procedural swaddling, was in itself impermissible." *Amsden v. Moran,* 904 F.2d 748, 753 (1st Cir. 1990). "The substantive component of the Due Process Clause is violated by executive action when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Espinoza v. Sabol*, 558 F.3d 83, 87 (1st Cir. 2009) (quotation omitted); *see also*, *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006) (conduct must be "extreme and egregious," "truly outrageous, uncivilized, and intolerable," "stunning"). A

21

plausible pleading, however, must do more than rely only on "labels," "conclusions," or "formulaic recitations of the elements," free from "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Glob. Tower Assets, LLC v. Town of Rome*, 810 F.3d 77, 91 (1st Cir. 2016) ("the Plaintiff has alleged no facts that would support the "conscience shocking" finding necessary to sustain a substantive due process claim). *See Espinoza*, 558 F.3d at 87.  Plaintiff's allegations do not support a substantive due process claim.

## G.    Discrimination Claim Under 42 U.S.C. § 1981

Plaintiff also seeks relief against under 42 U.S.C. § 1981, which prohibits race-based discrimination.  The statute provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

The First Circuit has noted:

> Courts have … treated the bar on racial discrimination imposed by § 1981 and § 1983 as coextensive with the protections of the Equal Protection Clause. *See Mescall v. Burrus*, 603 F.2d 1266, 1271 (7th Cir. 1979) ("The relationships of §§ 1981 and 1983 to the Fourteenth Amendment are so close ... that we believe the use of each section must be guided by the principles announced by the Supreme Court for application of the Fourteenth Amendment to discrimination cases."); *see also Anderson [ex re. Dowd v. City of Boston]*, 375 F.3d [71,] 77 n.7 [(1st Cir. 2004)] (concluding that plaintiffs' claims under Title VI, § 1981 and § 1983 "turn on the resolution of the equal protection claim").

*Comfort v. Lynn Sch. Comm.*, 418 F.3d 1, 23 (1st Cir. 2005), *abrogated on other grounds*, *Parents Involved in Comty. Sch. v. Seattle Sch. Dist.*, 551 U.S. 701 (2007).  The reasoning

herein regarding the section 1983 and Title VI claims applies equally to Plaintiff's claims under section 1981.[8]

In addition, Plaintiff's claims under 42 U.S.C. § 1981 are subject to a four-year statute of limitations pursuant 28 U.S.C. § 1658, the "catch-all" provision for "civil action[s] arising under an Act of Congress enacted after" Dec. 1, 1990. *See Jones v. R.R. Donnelley & Sons Co*., 541 U.S. 369, 382-83 (2004) (concluding that the Civil Rights Act of 1991 extended the protections of section 1981 to harassing and discriminatory conduct during employment and thus were subject to the four-year limitations under 28 U.S.C. § 1658); *see also Johnson v. Federal Express Corp*., 996 F. Supp. 2d 302, 314 (M.D. Penn. 2014). As explained above, Plaintiff's Pennsylvania-based claims are time-barred, as are Plaintiff's Maine-based claims predicated on events which occurred prior to May 17, 2018.

## H.   Americans with Disabilities Act

Plaintiff cites the Americans with Disabilities Act (ADA) in support of his claims. The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services programs and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Bd. of Tr. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 372 (2001). As

---

[8] In *Jett v. Dallas Indep. Sch. Distr*., 491 U.S. 701 (1989), the Supreme Court ruled that "the express action at law provided by § 1983 for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." 491 U.S. at 705. Congress amended § 1981 through the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071. Most federal courts of appeal, including the First Circuit, have held that Congress did not overrule *Jett* with the 1991 amendments. *See Buntin v. City of Boston*, 857 F.3d 69, 74-75 (1st Cir. 2017); *see also Oaks v. City of Philadelphia*, 59 Fed. App'x 502, 503 (3d Cir. 2003). Thus, to the extent Plaintiff purports to bring any racial discrimination claims against Pennsylvania and Maine state actors, the claims essentially merge with his § 1983 claims.

explained below, Plaintiff has not alleged sufficient facts to establish the elements necessary to sustain a claim under either Title I or II of the ADA.

### 1. Title I

Plaintiff evidently attempts to assert a claim against both the CWA and the Clarion Hotel pursuant to Title I of the ADA.  Title I of the ADA prohibits employment discrimination against an otherwise qualified individual based on a disability.  42 U.S.C. § 12112(a); *Farris v. Shinseki*, 660 F.3d 2011, 562 (1st Cir. 2011).  To sustain an employment discrimination claim under the ADA, Plaintiff must establish that (1) he is disabled within the meaning of the ADA; (2) he was qualified to perform the essential functions of the job, either with or without reasonable accommodation; and (3) the employer took an adverse employment action against him because of the alleged disability. *Vélez-Ramirez v. P.R. through Secretary of Justice*, 827 F.3d 154, 157 (1st Cir. 2016). In addition, "[a]n ADA plaintiff must comply with the administrative claim requirements of Title VII." *Skidmore v. Am. Airlines, Inc*., 198 F. Supp. 2d 131, 134 (D. P.R. 2002).  Under Title VII, a plaintiff must file a civil action within 90 days of receiving a right-to-sue letter." *Id*.

As discussed in the context of Plaintiff's attempt to assert a Title VII claim, as to both the Clarion Hotel and CWA, Plaintiff either failed to file a federal lawsuit timely following any right-to-sue letter the EEOC might have issued, or Plaintiff has not secured a right-to-sue letter and thus has not exhausted his administrative remedies.  Plaintiff, therefore, cannot proceed on a Title I claim against the Clarion Hotel and the CWA.  In addition, as to the Clarion Hotel, Plaintiff alleges no adverse employment action due to a

disability.  Plaintiff, therefore, has not alleged an actionable Title I claim against the Clarion Hotel.

### 2.  Title II

Under Title II, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Title II "is characterized as a guarantee of 'meaningful access' to government benefits and programs." *Pollack v. Reg'l Sch. Unit 75*, 886 F.3d 7, 80 (1st Cir. 2018) (quoting *Theriault v. Flynn*, 162 F.3d 46, 48 (1st Cir. 1998)).  To state a claim under Title II of the ADA against a public entity as defined by 42 U.S.C. § 12131(1),[9] a plaintiff must plead "(1) that he [or she] is a qualified individual with a disability; (2) that he [or she] was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Parker v. Universidad de P.R.*, 225 F.3d 1, 5 (1st Cir. 2000).

Plaintiff has alleged that he is disabled.  On the exclusion prong, the "inquiry is 'not whether the benefits to persons with disabilities and to others are actually equal, but whether those with disabilities are as a practical matter unable to access benefits to which they are legally entitled.'" *Buchanan ex rel. Estate of Buchanan*, 366 F. Supp. 2d at 176 (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003), *cert. denied*, 541

---

[9] A "public entity" is "any department, agency, special purpose district, or other instrumentality of a State … or local government." *Id*.

U.S. 936 (2004)).  Plaintiff does not specify the public programs in either Pennsylvania or Maine from which he was excluded as the result of a disability.  *See People First of Ala. v. Merrill*, 467 F. Supp. 3d 1179, 1216 (N.D. Ala. 2020) ("Mere difficulty in accessing a benefit is not, by itself, a violation of the ADA.") *see also Ass'n for Disabled Ams. v. Orlando*., 153 F. Supp. 2d 1310, 1320 (M.D. Fla. 2001) (elements at facilities that inconvenienced individuals in wheelchairs did not violate ADA where none were "so severe that they effectively prevent[ed] disabled individuals from attending" events).  Furthermore, Plaintiff makes no assertion as to which entities among the named defendants excluded him from a program or denied him a benefit because of his disability.

In addition, at least some of Plaintiff's Title II claims would be time-barred. Title II of the ADA borrows the most analogous statute of limitations from state law.  *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 118 (1st Cir. 2003); *see also Disabled in Action of Penn. v. Southeastern Penn. Transp. Auth*., 539 F.3d 199, 208 (same).  The most analogous statutes of limitations are those for personal injury.  *See, e.g., Downs v. Mass. Bay Transp. Auth*., 13 F. Supp. 2d 130, 136 (D. Mass. 1998); *Disabled in Action of Penn*., 539 F.3d at 208.  As noted above, in Pennsylvania the applicable statute of limitations is two years, and in Maine it is six years.  Whichever limitations period applies, Plaintiff's Pennsylvania-based claims under Title II are barred, as are his Maine-based claims arising before May 22, 2016.

## I.   Conspiracy

Plaintiff alleges a "conspiracy" among the defendants to violate his constitutional rights.  Pursuant to 42 U.S.C. § 1985(3), a general civil conspiracy is defined as "two or

more persons … conspir[ing] … for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws …." *Id.*  To state a claim for conspiracy, a plaintiff must allege (1) the existence of a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws;[10] (3) that the defendant(s) committed an overt act in furtherance of the conspiracy; and (4) that caused injury to either the plaintiff's person or property "'or a deprivation of a constitutionally protected right.'" *Parker v. Landry*, 935 F.3d 9, 17-18 (1st Cir. 2019) (quoting *Pérez-Sánchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008); *see also Alston v. Spiegel*, 988 F.3d 564. 577 (1st Cir. 2021).

To plead a conspiracy under the statute,

 "a plaintiff must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of [his] civil rights" or "plausible factual allegations sufficient to support a reasonable inference that such an agreement was made." [*Alston*, 988 F.3d at] at 577-78 ….  Put simply, "[v]ague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss." *Id*. at 578 (citing *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019)).

*Brown v. Cumberland Cty*, 557 F. Supp. 3d 169, 188 (D. Me. 2021).  "Although a court can infer that an agreement was made when direct evidence is lacking, such an inference must still be based on sufficient and plausible factual allegations." *Id*.

Plaintiff alleges two conspiracies involving Pennsylvania and Maine, state agencies, counties, municipalities, businesses, officials, healthcare providers, and other individuals,

---

[10] A "general section 1985[(3)] conspiracy claim … is actionable only under circumstances involving an equal protection violation, *i.e.*, circumstances involving discriminatory class-based animus …." *Gladu v. Ross*, No. 2:15-CV-274-DBH, 2017 WL 1403157, at *1 (April 19, 2017).

to surveille and harass Plaintiff, and to deprive him of his constitutional rights.  It is not "in the realm of possibility" that any agreement was made among the many disparate entities identified and "nothing in the [amended complaint]'s factual allegations permit a reasonable inference to that effect."  *Alston*, 988 F.3d at 578.  Where, as in this case, a plaintiff "plead[s] no facts to support the existence of an agreement" among the defendants to violate the plaintiff's constitutional rights, a plaintiff "fail[s] to cross the plausibility threshold."  *Thomas v. Town of Chelmsford*, 267 F. Supp. 3d 279, 307 (D. Mass. 2017); *see also Brown*, 557 F. Supp. 3d at 188-89; *Alston*, 988 F.3d at 578 ("A pleader is entitled to have reasonable inference drawn in his favor, but he is not entitled to the benefit of speculation unanchored to sufficiently supportive facts.").

## J.    Defamation

Plaintiff alleges that Defendant LePage defamed him in 2016, when the former governor made disparaging remarks suggesting minorities were coming to Maine in part for unlawful purposes.  (Complaint ¶ 18.)

"Defamation of a large group gives rise to no civil action on the part of an individual member of the group unless he [or she] can show special application of the defamatory matter to him[self or her]self."  *Arcand v. Evening Call Publ'g Co.*, 567 F.2d 1163, 1164 (1st Cir. 1977) (quoting J. Tanenhaus, *Group Libel*, 35 Cornell L.Q. 261, 263 (1950)); *see also* Restatement, Torts (Second) § 564A(b) (a plaintiff must show that "the circumstances of publication reasonably give rise to the conclusion that there is particular reference … to [him or her]").  Plaintiff has failed to allege any "special application" of the alleged remarks to him, and therefore, he has failed to allege an actionable claim for defamation.

Moreover, in Maine, "[a]ctions for slander and libel must be commenced within 2 years after the action accrues." 14 M.R.S. § 753. Plaintiff alleges the remarks were made in 2016; Plaintiff filed this action in 2022. Plaintiff's defamation claim is time-barred.

## K.    Criminal Conduct

Plaintiff alleges Defendants in Pennsylvania and Maine have committed various federal and/or state crimes. To the extent Plaintiff seeks to institute criminal proceedings, Plaintiff does not have standing to pursue criminal charges against any of the Defendants. *United States v. Nixon*, 418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case"); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (private citizens lack a judicially cognizable interest in the criminal prosecution of another); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989); *Briand v. Lavigne*, 223 F. Supp. 2d 241, 251 (D. Me. 2002).

CONCLUSION

Based on the foregoing analysis, I grant Plaintiff's motion to amend, deny Plaintiff's motion for electronic copies,[11] and recommend the Court dismiss Plaintiff's complaint, as amended.

---

[11] Plaintiff also filed a motion requesting "to receive one free electronic copy of all documents filed electronically," including previous filings in this matter. (Motion to Receive Electronic Copies, ECF No. 9.) Because Plaintiff's motion is not the proper vehicle to register for electronic filing, I deny the motion. Pro se litigants such as Plaintiff may register for electronic filing and to receive electronic notification of documents submitted electronically from the Court's website, and downloading the "ECF Registration for Pro Se Filers" pdf. The pdf includes the registration form and instructions for submitting it to the Clerk's office.

## **NOTICE**

Any objections to the order on the motion to amend and the motion to receive electronic copies shall be filed in accordance with Federal Rule of Civil Procedure 72.

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 22nd day of July, 2022.